**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN C. BERKERY, SR.,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **EXPERIAN PLC,** *et al.*, | : | **No. 21-1250** |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                    MARCH ___, 2022

Courts liberally construe the pleadings of *pro se* litigants. But, even so, a *pro se* plaintiff still must state a claim upon which relief can be granted. Mr. Berkery has not done so here. As a result, the Court grants First Premier Bank's and United National Corporation's motions to dismiss.

*Pro se* litigants themselves are not immune from suit. At this stage, Trans Union has stated a counterclaim that Mr. Berkery breached their Settlement Agreement. Thus, the Court also denies Mr. Berkery's motion to dismiss Trans Union's counterclaim.

Finally, this Court does not have jurisdiction to enforce the terms of the Settlement Agreement that formed the basis of a Verizon's stipulated dismissal with prejudice.

### BACKGROUND

John C. Berkery, Sr. filed a complaint against the three major credit reporting agencies, Equifax, Experian, and Trans Union, as well as First Premier Bank, United National Corporation, and Verizon Communications. His complaint contains a litany of allegations against the defendants. Mr. Berkery's complaint relates to accounts with Trumark Financial and One Main

Financial; he alleges that the three main consumer reporting agencies (Trans Union, Equifax[1], and Experian) are reporting false or misleading information as to One Main Financial and that Trans Union alone is reporting false or misleading information as to Trumark Financial. Doc. No. 1 ¶¶ 34–38, 43–50. He alleges this is in violation of the Fair Credit Reporting Act (FCRA). *Id.* Mr. Berkery also alleges that First Premier Bank and its parent corporation, United National Corporation, are falsely inflating the balance of his closed account in apparent violation of the FCRA. *Id.* ¶¶ 39–42. Finally, Mr. Berkery alleges common law fraud against all defendants. *Id.* ¶¶ 51–54.

Mr. Berkery and two of the parties, Verizon and Experian, stipulated to the dismissal of Mr. Berkery's complaint against them with prejudice, Doc. Nos. 39, 40, which the Court approved, Doc. Nos. 41, 45. This leaves his claims against Equifax, Trans Union, First Premier Bank, and United National Corporation. Pending before the Court are First Premier's and United National's motions to dismiss Mr. Berkery's complaint as it pertains to them. Doc. Nos. 14, 29. In addition, Trans Union answered Mr. Berkery's complaint and filed a counterclaim alleging that Mr. Berkery breached the terms of their Settlement Agreement. Doc. No. 26. Mr. Berkery then filed a motion to dismiss this counterclaim. Doc. No. 30. Mr. Berkery also filed a motion to enforce his separate Settlement Agreement with Verizon (even though Verizon has been dismissed). Lastly, Mr. Berkery filed a petition for a writ of mandamus. All motions are ripe for resolution.

### LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be

---

[1] There is no record of service on Equifax despite a summons being issued. Mr. Berkery has brought this to the Court's attention, and the Court responded accordingly. *See* Doc. Nos. 43, 47, 49, 50, 51.

enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions").

The Court notes that Mr. Berkery's *pro se* pleading should be "liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). That admonition does not demand that the Court ignore or discount reality, however, even given the indulgent nature of the Court's review of *pro se* pleadings. The Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (internal quotation marks omitted).

## DISCUSSION

After the various stipulations of dismissal, Mr. Berkery's complaint contains the remaining counts: false reporting of his Trumark Financial account in violation of the FCRA against Trans Union (Count Two); false inflation of the balance of his closed account against First Premier Bank and United National Corporation (Count Three); false reporting of his One Main Financial Account in violation of the FCRA against Trans Union and Equifax (Count Four); and common law fraud against all remaining defendants (Count Five).

The parties have made a number of motions in this case. To begin, First Premier Bank and its parent corporation, United National Corporation, move to dismiss Counts Three and Five of

Mr. Berkery's complaint against them. Doc. Nos. 14, 29, 35. Mr. Berkery opposes these motions. Doc. Nos. 23, 29. Next, Trans Union answered Mr. Berkery's complaint and counterclaimed against Mr. Berkery for breach of contract. Doc. No. 26. Mr. Berkery both answered and filed a motion to dismiss Trans Union's counterclaim. Doc. Nos. 30, 31, 38. Trans Union opposes Mr. Berkery's motion to dismiss. Doc. No. 37. Mr. Berkery also filed a motion to enforce his settlement with Verizon and a motion for sanctions. Doc. No. 53. Verizon opposes this motion. Doc. No. 56. Lastly, Mr. Berkery has filed a petition for a writ of mandamus regarding service on Equifax. Doc. No. 58.

## I.   Mr. Berkery Has Failed to State a Claim Against Either First Premier Bank or United National Corporation

As against First Premier Bank and United National Corporation, Mr. Berkery alleges that they have "falsely inflated [his] account balance in order to unjustly enrich themselves and defraud [him] in violation of 15 U.S.C. § 1681s-2." Doc. No. 1 ¶ 40. Mr. Berkery further alleges that, as a result, "he was forced to unilaterally close the account" and that they "transmitted inaccurate and negative information to the three major credit reporting bureaus, all in violation of the . . . FCRA." *Id.* ¶¶ 41–42. In support of this, Mr. Berkery has asserted numerous factual allegations against First Premier Bank. *See id.* ¶¶ 15–27. Construing Mr. Berkery's *pro se* pleading liberally, as the Court must, *Estelle*, 429 U.S. at 106, the Court construes this count as including an allegation that First Premier and United National violated the FCRA and as adding to Count Five that *both* First Premier and United National committed common law fraud. First Premier appears to view Mr. Berkery's complaint the same way. *See* Doc. No. 14. Both First Premier and United National move to dismiss these portions of Mr. Berkery's complaint.

### A.   Mr. Berkery Has Failed to State a Viable Claim Against First Premier Bank

Mr. Berkery first claims that First Premier Bank violated a certain portion of the FCRA, 15 U.S.C. § 1681s-2(a), for falsely inflating the balance of his closed account. Doc. No. 1 ¶¶ 39–42. This section of the FCRA imposes certain duties on "furnishers" of information to provide accurate information to consumer reporting agencies.[2] *See* 15 U.S.C. § 1681s-2. Mr. Berkery's claim under the FCRA fails for two independent reasons.

First, as First Premier rightly points out, there is no private cause of action under 15 U.S.C. § 1681 s-2(a). *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011) (per curiam). Instead, 15 U.S.C. § 1681s-2(b) is "the only section that can be enforced by a private citizen." *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011). Thus, Mr. Berkery's claim fails at the threshold step because he cannot bring suit against First Premier Bank under the section of the FCRA that he seeks to invoke.

Second, recognizing this deficiency, Mr. Berkery attempts to amend his complaint through his responsive pleading. Doc. No. 23, at 2. But a party cannot amend its complaint in an opposition brief. *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Spotting this problem, Mr. Berkery petitions for leave to amend his complaint to reflect this change. Doc. No. 23, at 2. But even if Mr. Berkery amended his complaint to substitute the proper section of the FCRA, 15 U.S.C. § 1681s-2(b), it would be futile because it would still fail to state a claim sufficient to survive a motion to dismiss.[3] To state a claim under § 1681s-2(b), a plaintiff must

---

[2] A "furnisher" is undefined in the statute, but at least one court has defined it as "any entity that reports information relevant to a consumer's credit rating—i.e., payment history, amount of debt, and credit limit—to credit reporting agencies" and noted that this definition would include entities such as "'credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies.'" *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 446 (D.N.J. 2010) (quoting H.R. Rep. No. 108–263, at 24 (2003) (Conf. Rep.)).

[3] Because Mr. Berkery filed his complaint *pro se*, the Court liberally construes his pleadings and will "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). Thus, while Mr. Berkery's complaint addresses the wrong portion of the FCRA, the Court will address the proper provision not because it is in his responsive briefing, but so as to more expeditiously resolve this dispute for the parties.

establish three elements: "(1) that he notified a [credit reporting agency] of the dispute under §

1681i, (2) that the [credit reporting agency] notified the party who furnished the information, and

(3) that the party who furnished the information failed to investigate or rectify the disputed

charge." *Hoffmann v. Wells Fargo Bank, N.A.*, 242 F. Supp. 3d 372, 391 (E.D. Pa. 2017). But here

again, Mr. Berkery's complaint does not meet the threshold requirement. Nowhere in his complaint

does he allege that he contacted *any* of the three major credit reporting agencies to notify them of

the allegedly inaccurate information supplied by First Premier Bank. Instead, the portion of Mr.

Berkery's complaint pertaining to First Premier Bank focuses on the bank's alleged predatory

practices and certain negative publicity. *See* Doc. No. 1 ¶¶ 15–27. Thus, even construing Mr.

Berkery's complaint very liberally, he has failed to state a claim. This is a second and separate

reason to reject Mr. Berkery's FCRA allegation against First Premier. Therefore, the Court

dismisses Count Three against First Premier Bank.

Next, Mr. Berkery alleges in Count Five that First Premier Bank, along with all the other

named defendants, committed common law fraud. Doc. No. 1 ¶¶ 51–54. As to this claim, the

Court's jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332. Neither party has raised

a conflict of laws problem and First Premier Bank seems to agree that Pennsylvania law applies,

*see* Doc. No. 14-2, at 5. Thus, the Court will apply Pennsylvania law. *Baptiste v. Bethlehem

Landfill Co.*, 965 F.3d 214, 225 (3d Cir. 2020).

To state a claim for common law fraud under Pennsylvania law, Mr. Berkery must allege

"(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with

knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of

misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the

6

resulting injury was proximately caused by the reliance." *Richards v. Ameriprise Fin., Inc.*, 152 A.3d 1027, 1035 (Pa. Super. Ct. 2016) (quoting *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)).

But Mr. Berkery's complaint does not allege that First Premier Bank made any representations that were false, let alone that it did so with knowledge of their falsity. Instead, Mr. Berkery alleges that First Premier settled a case with the New York Attorney General over deceptive marketing, Doc. No. 1 ¶ 17, that Senator Bernie Sanders criticized First Premier, *id.* ¶ 18, that other parties have sued First Premier numerous times, *id.* ¶ 21, that First Premier charges high interest rates, *id.* ¶ 22, that First Premier charges for credit limit increases, *id.* ¶ 23, that First Premier charges "the highest interest rate on the market," *id.* ¶ 24, and that First Premier "ballooned an artificial balance to over $1,000," *id.* ¶ 25. Mr. Berkery possibly comes closest when he alleges that "the consumer is not affirmatively apprised up front of their rapacious terms"—seeming to allege some false representations—but he then clarifies that people can find those same terms "upon clicking a different web address." *Id.* ¶ 21. In short, none of these allegations involve any false representations.

Under the typical pleading requirements contained in Federal Civil Procedure Rule 8, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mr. Berkery has not met even that threshold. When alleging a claim of fraud, "a party must state with *particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). This requirement means that a plaintiff must "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged and plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (internal quotation marks

and citation omitted). Mr. Berkery certainly has not done that. Therefore, the Court dismisses Count Five against First Premier Bank.

B. <u>Mr. Berkery Has Failed to State a Viable Claim Against United National Corporation</u>

United National Corporation notes that Mr. Berkery's complaint only twice mentions its involvement in any of his allegations: he states where United National Corporation is located, Doc. No. 1 ¶ 8, and claims that United National, as First Premier Bank's parent corporation, also falsely inflated his bank account to enrich itself and defraud him in violation of the FCRA, *id.* ¶ 40. But nowhere in his complaint does Mr. Berkery endeavor to explain how United National Corporation was involved in the conduct he alleges violated the FCRA or that any conduct by it constituted common law fraud. Once again, while the Court must view *pro se* pleadings liberally, as already stated, the Court "need not accept as true unsupported conclusions." *Doug Grant, Inc.*, 232 F.3d at 184. Indeed, at the motion to dismiss stage, a Court must rule not "upon the presence of mere words but, rather, upon the presence of a factual situation." *Id.* (citation omitted). Here, the mere two mentions of United National Corporation along with unsupported conclusions of United National's involvement is insufficient to state a claim.

In another attempt to correct the deficiency of his complaint, Mr. Berkery claims in his response that United National is vicariously liable for all of the conduct referred to in his allegations against First Premier. *See* Doc. No. 33, at 2. But, again, a plaintiff cannot amend his complaint in an opposition brief. *Pa. ex rel. Zimmerman*, 836 F.2d at 181. Plus, even if the Court were to allow such a casual amendment, Mr. Berkery's assertion of vicarious liability is legally flawed. A parent corporation is "not normally liable for the wrongful acts or contractual obligations of a subsidiary even if or simply because the parent wholly owns the subsidiary" unless that parent company "so dominates the activities" of the subsidiary "that it is necessary to treat the [subsidiary]

8

as an agent or 'alter ego'" of the parent company. *Jean Anderson Hierarchy of Agents v. Allstate Life Ins. Co.*, 2 F. Supp. 2d 688, 691 (E.D. Pa. 1998). Mr. Berkery has not alleged anything of the sort here. Therefore, the Court also dismisses Counts Three and Five as against United National Corporation.

## II.  Trans Union Has Stated a Viable Claim for Breach of Contract Against Mr. Berkery

In his complaint, Mr. Berkery alleges three counts against Trans Union. Trans Union answered Mr. Berkery's complaint and filed a counterclaim against him for breach of contract. Doc. No. 26. Mr. Berkery moves to dismiss that counterclaim. Doc. No. 30.

In ruling on a motion to dismiss a counterclaim, a court adheres to the same standards as a motion to dismiss a complaint. *1600 Walnut Corp. v. Cole Haan Co. Store*, 530 F. Supp. 3d 555, 558 (E.D. Pa. 2021). Thus, a court may consider documents "attached to or submitted with the counterclaim, and any matters incorporated by reference or integral to the claim." *Id.* (quoting *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). Moreover, a court may rely on the facts alleged in the complaint "to the extent that they have been admitted in the defendant's answer." *Id.* (citation omitted). Trans Union has attached a redacted version of the Settlement Agreement between it and Mr. Berkery to its answer and counterclaim. Doc. No. 26-1. Because Trans Union's counterclaim is for breach of that same Settlement Agreement, it is "integral to the claim" and the Court will consider it as part of Mr. Berkery's motion to dismiss.

Trans Union alleges that Mr. Berkery has sued it on six prior occasions. Doc. No. 26, at 30 ¶ 1. Mr. Berkery does not dispute this. Doc. No. 30, at 2. Trans Union alleges that as a result of Mr. Berkery's sixth lawsuit against Trans Union, Mr. Berkery and Trans Union signed a Settlement Agreement resolving all claims from that sixth lawsuit.[4] Doc. No. 26, at 30 ¶ 3. As relevant here,

---

[4] That prior lawsuit was *Berkery v. Capital One Fin. Corp., et al.*, No. 18-cv-3417 (E.D. Pa.).

by signing that Settlement Agreement, Mr. Berkery "acknowledge[d] that he has reviewed the copy of his Trans Union consumer disclosure, dated January 24, 2020 . . . and [] agree[d] that all information contained within . . . is accurate and will not provide the basis for any future claims against Trans Union." Doc. No. 26-1 ¶ 5. In addition, Mr. Berkery "agree[d] to provide Trans Union written notice of any claim or anticipated lawsuit . . . at least thirty (30) days prior to its filing with any Court . . . [including] the basis for the claim or proposed lawsuit and includ[ing] the specific facts, . . . the specific laws, . . . and the specific relief requested." *Id.* ¶ 7. Trans Union alleges that Mr. Berkery has breached those clauses. Doc. No. 26, at 32 ¶¶ 15–16. Specifically, Trans Union alleges that Mr. Berkery did not provide any notice of his intention to file suit, *id.* ¶¶ 10–11, and that the account information Mr. Berkery claims Trans Union to be inaccurately reporting now is the very same information he verified to be accurate as part of the Settlement Agreement, *id.* ¶ 14.

Mr. Berkery moves to dismiss Trans Union's counterclaim. Doc. No. 30. Mr. Berkery's motion appears to be based on two arguments: (1) the portion of Settlement Agreement averring to the correctness of his credit report as of January 24, 2020, is not a contract, *id.* at 3, and (2) the Settlement Agreement only addressed the correctness of the information in Trans Union's credit report as of January 24, 2020, not any errors subsequent to that date, *id.* at 6–7.

Mr. Berkery is right about the elements of a breach of contract claim, but wrong about their application to the facts of his case. "To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege three things: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages." *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 502 (E.D. Pa. 2008) (citation omitted); *see also Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d

1247, 1258 (Pa. 2016). Mr. Berkery's first argument does not withstand serious scrutiny. First, a settlement agreement is governed by contract law, is enforceable so long as the parties agreed to all material terms, and "will not be set aside absent a clear showing of fraud, duress, or mutual mistake." *Pennsbury Vill. Assocs., LLC v. McIntyre*, 11 A.3d 906, 914 (Pa. 2011) (citations omitted). And Mr. Berkery agreed as part of the Settlement Agreement that he had reviewed and confirmed the accuracy of the information in his January 24, 2020 Trans Union credit report. Doc. No. 26-1 ¶ 5. It is the Settlement Agreement that Trans Union alleges he has breached, not any terms of the credit report itself.

Mr. Berkery's related argument, that "Trans Union has failed to identity what terms of the *credit report* of January 24, 2020 were breached," also misses the mark. Doc. No. 30, at 6 (emphasis added). Trans Union does not allege against him that the terms of the *credit report* were breached, but that the terms of the *Settlement Agreement* were breached. And Trans Union has sufficiently stated a claim for breach of contract, the contract at issue being the Settlement Agreement. Trans Union (1) alleged the existence of the Settlement Agreement (a contract), including the terms of two specific clauses; (2) a breach of those clauses; and (3) damages in the form of costs and fees required to defend another suit. Thus, even if Mr. Berkery is right that the Settlement Agreement could be interpreted to permit suits about incorrect information added to his credit report after January 24, 2020, that would not in any way affect Trans Union's counterclaim.[5] The Settlement Agreement expressly required Mr. Berkery to give Trans Union 30 days written notice before filing any lawsuit. Doc. No. 26-1 ¶ 7. Trans Union has alleged that Mr. Berkery failed to give them *any notice*. Doc. No. 26, at 31 ¶ 10. Mr. Berkery does not contest this. Trans Union has also alleged that it suffered damages as a result. *Id.* at 32 ¶ 17. Therefore, Trans

---

[5] The Court need not and does not decide this issue today because it does not affect the Court's ruling.

Union has stated a viable claim for breach of contract, and the Court denies Mr. Berkery's motion to dismiss.

### III.    The Court Lacks Jurisdiction to Adjudicate Mr. Berkery's Motion Against Verizon

Mr. Berkery has filed a motion to enforce the terms of his settlement with Verizon and a motion for sanctions. Doc. No. 53. With the intention of gaining a complete understanding of the nature of Mr. Berkery's motion and providing a final resolution for all parties, the Court ordered Verizon to respond, even though Verizon had already been dismissed as a party to this suit. Doc. No. 54. Verizon responded. Doc. No. 56.

As part of this lawsuit, Mr. Berkery and Verizon entered into a Settlement Agreement. Doc. No. 53, at 1; *accord* Doc. No. 56, at 2. Mr. Berkery claims that Verizon has breached the terms of the agreement and requests the equitable remedy of specific performance. Doc. No. 53, at 12. In addition, Mr. Berkery requests sanctions against Verizon for what he claims was its purposeful failure to comply with the terms of the Settlement Agreement. *Id.* But the Court lacks jurisdiction to rule on this motion.

A court's "enforcement of [a] settlement agreement. . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994). As the Supreme Court explained: "The suit involves a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit. No federal statute makes that connection (if it constitutionally could) the basis for federal-court jurisdiction over the contract dispute." *Id.* at 381.

Mr. Berkery previously stipulated to the dismissal of his complaint against Verizon with prejudice. Doc. No. 39. The Court approved this stipulation and issued an Order dismissing Verizon with prejudice under Federal Rule of Civil Procedure 41(a). Doc. No. 41. Mr. Berkery

now moves for the Court to enforce the terms of the Settlement Agreement. But Mr. Berkery's earlier agreement to dismiss this action with prejudice against Verizon was part of the consideration for the Settlement Agreement. *See* Doc. No. 56-1 ¶ 1.1.5. And the parties in this case did not "provide for the court's enforcement of a dismissal-producing settlement agreement" in their stipulation of dismissal under Federal Rule of Civil Procedure 41(a). *Kokkonen*, 511 U.S. at 381. "Absent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.* at 382. While Verizon did not raise this defect in its response, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). The Court lacks jurisdiction to adjudicate Mr. Berkery's motion.

For the same reason, the Court will not reach the merits of Mr. Berkery's motion to enforce against Verizon. "A court that is without proper jurisdiction cannot proceed at all, and must merely note the jurisdictional defect and dismiss the suit." *Larsen v. Senate of the Commw.*, 152 F.3d 240, 245 (3d Cir. 1998).

Therefore, the Court dismisses Mr. Berkery's motion to enforce and his application for the Court to consider sanctions.

## IV.   Mr. Berkery Has Not Demonstrated "Drastic Circumstances" that Warrant a Writ of Mandamus

Lastly, Mr. Berkery has filed a petition for a writ of mandamus. Doc. No. 58. He requests that the Court issue an order to show cause to the United States Marshal's Service for its failure to serve his complaint on Equifax, Inc. Doc. No. 58, at 5.

Mandamus is a "drastic remedy that a court should grant only in extraordinary circumstances in response to an act amounting to a judicial usurpation of power." *Gillete v. Prosper*, 858 F.3d 833, 841 (3d Cir. 2017) (quoting *In re Diet Drugs Prods. Liab. Litig.*, 418 F.3d 372, 378 (3d Cir. 2005)). A writ of mandamus is an appropriate remedy only when "(1) the petitioner has no other adequate means to attain the relief sought; (2) the right to the issuance of the writ is clear and indisputable; and (3) the issuing court . . . is satisfied in the exercise of its discretion that mandamus is appropriate under the circumstances." *Id.* (internal quotation marks omitted).

The Court understands Mr. Berkery's frustration regarding service of summons on Equifax, Inc., but Mr. Berkery has not demonstrated anything warranting the "drastic remedy" of mandamus here. Therefore, the Court denies his petition for a writ of mandamus.

CONCLUSION

Because this opinion addressed many claims and certain parties have stipulated to the dismissal of other claims, the Court will briefly summarize what claims have been dismissed and what claims remain.

The Court grants First Premier Bank's and United National Corporation's motions to dismiss the portion of Mr. Berkery's complaint implicating them. Thus, Count Three is dismissed in its entirety, and Count Five is dismissed as against First Premier Bank and United National Corporation. Mr. Berkery has stipulated to the dismissal of his claims against Verizon—meaning Count One is dismissed in its entirety. Mr. Berkery has also stipulated to the dismissal of his claims against Experian—meaning Counts Four and Five are dismissed as against Experian.

The Court denies Mr. Berkery's motion to dismiss Trans Union's counterclaim for breach of contract. Thus, Trans Union's counterclaim for breach of contract remains.

This decision does not affect Mr. Berkery's original claims against Trans Union. Thus, Counts Two, Four, and Five remain as against Trans Union. Mr. Berkery's claims against Equifax in Counts Four and Five also remain. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE