IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN C. BERKERY, SR.,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **TRANS UNION, LLC,** | : | **No. 21-1250** |
| *Defendant* | : | |

## M E M O R A N D U M

PRATTER, J.                                                    AUGUST 15, 2023

Pending before the Court are various motions relating to John C. Berkery's *pro se* claim that Trans Union, LLC violated the Fair Credit Reporting Act (FCRA) and Trans Union's counterclaim that Mr. Berkery breached a settlement agreement he entered into with Trans Union. Trans Union moves for summary judgment on Mr. Berkery's FCRA claim and on its breach of contract counterclaim against Mr. Berkery. Trans Union also moves to exclude evidence which Mr. Berkery attempts to submit in support of his response to the motion for summary judgment. Mr. Berkery moves for summary judgment on Trans Union's breach of contract counterclaim. For the reasons set forth below, the Court grants Trans Union's motion to exclude, grants Trans Union's motion for summary judgment in full, and denies Mr. Berkery's motion for summary judgment.

### BACKGROUND

On August 1, 2018, Mr. Berkery filed a lawsuit against Trans Union, LLC, among others, alleging violations of the FCRA. Mr. Berkery and Trans Union reached a settlement agreement to resolve that litigation. In fact, Mr. Berkery executed a settlement agreement and release with Trans Union (the "Settlement Agreement")—the terms of which Mr. Berkery agreed to keep

confidential—in exchange for a settlement payment, which Trans Union timely paid to Mr.

Berkery. The Settlement Agreement is a valid and enforceable contract.

By executing the Settlement Agreement, Mr. Berkery agreed that the information included

in his January 24, 2020 Trans Union consumer disclosure was accurate and that TruMark's

reporting of its account as "charged off" on the Trans Union consumer disclosure was accurate.[1,2]

He further confirmed that any reporting of this information by Trans Union would not serve as the

basis for any future claims against Trans Union.[3] Under the Settlement Agreement, Mr. Berkery

was also required to

> [p]rovide Trans Union written notice of any claim or anticipated lawsuit against
> Trans Union at least thirty (30) days prior to its filing with any Court. This written
> notice shall provide the basis for the claim or proposed lawsuit and include the
> specific facts relating to Plaintiff's claim, the specific laws (statutory, including
> specific code sections, or common law) alleged to have been violated by Trans
> Union and the specific relief requested. Plaintiff agrees not to bring any legal action
> against Trans Union should Trans Union address and remedy the matter as
> requested in such notice within thirty (30) days of receipt.

Redacted Settlement Agreement ¶ 7; Def.'s Statement of Material Facts ¶ 14. Finally, Mr. Berkery

agreed that if Trans Union became involved in a litigation arising out of his breach of the

Settlement Agreement, he would be responsible for Trans Union's reasonable attorneys' fees

incurred during the course of such litigation.[4]

---

[1]  Since the execution of the Settlement Agreement on January 30, 2020, there is no evidence that Trans Union reported the TruMark account in any manner other than "charged off."

[2]  Trans Union is a consumer reporting agency, whereas TruMark Bank is a furnisher of credit information. Trans Union relies on the information furnished by TruMark in reporting information on its consumer disclosures.

[3]  The Settlement Agreement provides in relevant part that "Plaintiff acknowledges that he has reviewed the copy of his Trans Union consumer disclosure, dated January 24, 2020 . . . and Plaintiff agrees that all information contained within the Disclosure is accurate and will not provide the basis for any future claims against Trans Union." Redacted Settlement Agreement ¶ 5.

[4]  The Settlement Agreement states in relevant part that the "Plaintiff agrees that Trans Union may recover any and all reasonable attorneys' fees, costs, and expenses incurred in enforcing any term of this Agreement or for breach thereof in addition to any other damages to which Trans Union may be entitled." Redacted Settlement Agreement ¶ 13.

In August 2020, TruMark sent Trans Union an automated universal data form (AUD) requesting that the TruMark account be deleted from Mr. Berkery's Trans Union credit file. According to Trans Union, the AUD sent by TruMark listed a different account number than the account number on the TruMark account in Mr. Berkery's file. This precluded Trans Union's computer system from matching the AUD to the account in Mr. Berkery's file, so Trans Union could not, and did not, delete the TruMark account in accordance with the AUD. Trans Union asserts that it sent a notice to TruMark communicating this error, but TruMark did not make any subsequent requests that Trans Union delete the account in question.[5]

On March 12, 2021, Mr. Berkery initiated this action by filing a complaint against Trans Union and other major credit reporting agencies, most of which have since been dismissed from this action.[6] Mr. Berkery initially alleged that Trans Union reported false or misleading information regarding a TruMark account on his credit report in violation of the FCRA. During this litigation, Mr. Berkery has apparently narrowed his claims against Trans Union, and his only remaining claim is that Trans Union violated the FCRA by failing to delete the TruMark account upon receipt of the August 2020 AUD and allegedly continuing to report the account even after receipt of the AUD. Mr. Berkery takes issue with Trans Union's failure to delete the TruMark account, *not* with the accuracy of the account information reported.

Trans Union answered Mr. Berkery's complaint and filed a counterclaim alleging that Mr. Berkery breached the terms of the Settlement Agreement. Trans Union argued that Mr. Berkery violated the Settlement Agreement because he (1) did not contact Trans Union regarding any

---

[5]     Mr. Berkery attempts to dispute this fact by introducing, for the first time in his response to Trans Union's motion for summary judgment, a declaration by John E. Monari, Vice President of TruMark, which states that TruMark never received notice from Trans Union regarding this error in the account number on the AUD. The declaration also states that "account number 00212135060004 is the same as account number 1000212135060004." Decl. of John E. Monari, Ex. A to Pl.'s Resp. to Mot. for Summ. J.

[6]     Mr. Berkery filed an Amended Complaint on September 24, 2021.

alleged inaccuracies appearing on his Trans Union credit report; (2) did not provide Trans Union with thirty (30) days' notice of his intention to initiate a lawsuit against Trans Union; and (3) filed a lawsuit based on Trans Union's reporting of accounts that Mr. Berkery confirmed in the Settlement Agreement were accurate and would not provide the basis for any future claims against Trans Union. Finally, as a result of Mr. Berkery's current lawsuit and his alleged breach of the Settlement Agreement, Trans Union contends that it has incurred significant attorneys' fees.

Trans Union filed a motion for summary judgment as to Mr. Berkery's FCRA claim, and as to its counterclaim for breach of contract against Mr. Berkery. Mr. Berkery filed a response to the motion for summary judgment to which he attached multiple documents including, *inter alia*: (1) an August 2021 Veterans United Home Loans letter to Mr. Berkery and unidentified and undated pages relating to Mr. Berkery's credit score; (2) a December 23, 2020 letter addressed to Trans Union and a January 1, 2021 letter addressed to Trans Union; and (3) a Declaration of John E. Monari. Trans Union filed an objection and a motion to exclude these documents because Trans Union argues that Mr. Berkery did not previously produce or identify them, making the documents inadmissible evidence. Mr. Berkery filed a motion for summary judgment as to Trans Union's counterclaim for breach of contract. Each motion is ripe for resolution.

### LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The movant bears the initial responsibility to establish the basis for the motion for summary judgment and to identify the portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on an issue, the moving party's initial burden can be met simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met its initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The Court views the evidence presented in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The Court notes that Mr. Berkery's *pro se* pleading should be "liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). That admonition does not demand that the Court ignore or discount reality, however, even given the indulgent nature of the Court's review of *pro se* pleadings. "[M]erely because a non-moving party is proceeding pro se does not relieve him of

the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact."

*Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000).

**DISCUSSION**

Trans Union argues that it is entitled to summary judgment on Mr. Berkery's FCRA claim and its counterclaim that Mr. Berkery breached the terms of the Settlement Agreement. Mr. Berkery argues that he is entitled to summary judgment on Trans Union's breach of contract counterclaim. Before the Court can address these arguments, however, it must address Trans Union's motion to exclude the documents Mr. Berkery submitted in support of his response to Trans Union's motion for summary judgment.

## I.    Trans Union's Motion to Exclude Evidence

In its motion to exclude, Trans Union makes two principal arguments. First, it argues that three of the documents Mr. Berkery attaches to his response to Trans Union's motion for summary judgment—the August 2021 Veterans United Home Loans letter, and the December 23, 2020 and the January 1, 2021 letters addressed to Trans Union—were submitted in violation of Federal Rules of Civil Procedure 26(a) and 26(e), were not previously identified or produced during discovery, were confirmed not to exist during Mr. Berkery's deposition, and so, pursuant to Rule 37(c)(1), should be excluded. Second, Trans Union argues that the declaration of John E. Monari was submitted in violation of Rules 26(a) and 26(e), is objectionable under Rule 56(c)(2), and is inadmissible because Mr. Monari was not previously identified, making the declaration without foundation, and, hence, hearsay.

Rule 26(a) provides that "within 14 days after the parties' Rule 26(f) conference," the parties must provide to each other their initial disclosures, including "(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses" and "(ii) a copy—or a

description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i)–(ii), 26(a)(1)(C). Rule 26(e) provides that

> [a] party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response . . . if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. 26(e)(1)(A).

"If a party fails to provide information or identity a witness as required by Rule 26(a) or (e), the party is *not allowed to use that information or witness to supply evidence on a motion . . .* unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). The decision to exclude evidence under Rule 37(c)(1) is within the Court's discretion, but the Third Circuit Court of Appeals has identified four relevant factors for Courts to consider in exercising this discretion:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.

*Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000).

## A.   The 2021 Loan Denial Letter, the December 2020 Letter to Trans Union, and the January 2021 Letter to Trans Union

Trans Union argues that before Mr. Berkery filed his response to Trans Union's motion for summary judgment, he never identified or produced the following documents: the August 2021 Veterans United Home Loans letter to Mr. Berkery, the December 2020 letter to Trans Union, and the January 2021 letter to Trans Union. Trans Union argues that Mr. Berkery did not identify or

produce *any* documents pursuant to Rule 26(a) or (e) or in response to Trans Union's discovery requests. Mr. Berkery confirmed this during his deposition. He testified that he had not turned over any documents to Trans Union during the course of this litigation and that he did not believe that he was in possession of any documents relevant to this action.

On the other hand, Mr. Berkery argues that he was not required to turn over initial disclosures to Trans Union under Rule 26(a) because the parties never had a Rule 26(f) conference. He further argues that he was not required to turn over the documents in question—the 2021 loan denial letter and the December 2020 and the January 2021 letters to Trans Union—because these documents were already in Trans Union's possession. Pl.'s Resp. to Def.'s Mot. to Strike at 3, 5 ("The documents complained of were three letters from Plaintiff to Trans Union which were already in Defendant's possession and therefore not a discovery obligation and a denial of credit on a VA loan from Veteran's United Mortgage Company."). Mr. Berkery also argues that Trans Union's arguments based on Rule 26(e) are "misplaced" because he contends that his case did not change such that he would be required to supplement his disclosures or responses. Thus, Mr. Berkery asserts that any argument that these documents must be excluded under Rule 37(c)(1) is "frivolous."

Despite his arguments to the contrary, Mr. Berkery has failed to comply with his discovery obligations under Rule 26(a) and (e). Having responded to Trans Union's discovery requests, Mr. Berkery has an obligation under Rule 26(e) to supplement his responses to Trans Union's discovery requests upon learning that his responses were incomplete or inaccurate. It is evident from Mr. Berkery's inclusion of these three documents in his response to the motion for summary judgment that at some point during this litigation, Mr. Berkery became aware of these documents and understood their import and relevance to this case. In its discovery requests, Trans Union

requested documents relating to Mr. Berkery's applications for credit and his communications with Trans Union.[7] The three documents at issue are clearly responsive to Trans Union's discovery requests. So, when Mr. Berkery became aware of these documents, he naturally became aware that his responses to Trans Union's discovery requests were incomplete. Under Rule 26(e), Mr. Berkery should have supplemented his discovery responses and identified and disclosed these documents to Trans Union. However, he did not do so and instead produced them for the first time in his response to the motion for summary judgment.

Under Rule 37(c)(1), because Mr. Berkery failed to provide information required by Rule 26(e), he "is not allowed to use that information . . . to supply evidence on a motion," including a response in opposition to a motion for summary judgment, "unless [his] failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "A party's misconduct is harmless if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." *Tolerico v. Home Depot*, 205 F.R.D. 169, 176 (M.D. Pa. 2002).

During his deposition, Mr. Berkery testified that he was not aware of, and did not have any documents in his possession, related to this dispute with Trans Union over the TruMark account, other than a copy of the August 2020 AUD sent to Trans Union by TruMark. Mr. Berkery also testified that he did not have any copies of his correspondence with Trans Union. Further, in his

---

[7]     Trans Union's Interrogatory No. 4 requests, in part, that Mr. Berkery "[s]tate the name, address and telephone number of every person or entity with which you have applied for credit, from which you have received credit or which has received your credit history, report or rating in the last seven (7) years, and . . . the disposition or outcome of the credit transaction." Def.'s First Set of Interrogs. ¶ 4. Relatedly, Trans Union's Interrogatory No. 5 requests that "[w]ith respect to each application or extension of credit identified in response to Interrogatory No. 4, state whether you allege that any action and/or inaction of Trans Union . . . affected such application for or extension of credit in any way." *Id.* ¶ 5. With respect to Mr. Berkery's communications, Trans Union's Interrogatory No. 8 requests that Mr. Berkery "[i]dentify all communications (written or oral) between you (or anyone acting on your behalf) and Trans Union or any other consumer reporting agency." *Id.* ¶ 8. Interrogatory No. 9 seeks the same information regarding Mr. Berkery's communications with "any furnisher of information to Trans Union or any other consumer reporting agency." *Id.* ¶ 9.

Responses and Objections to Trans Union's First Set of Interrogatories, Mr. Berkery answered that "Plaintiff has had no communication with anyone other than the defendant itself concerning this matter. Therefore, any communication is already in the defendant's hands." Pl.'s Resps. & Objs. to Def.'s First Set of Interrogs. at ECF 36.

Based on Mr. Berkery's deposition testimony, the Court cannot find that his failure to produce the three documents at issue "was substantially justified or . . . harmless." Fed. R. Civ. P. 37(c)(1). At many points during this litigation, Mr. Berkery was put on notice that these three documents were relevant to the litigation and that he was required to produce the documents in response to Trans Union's discovery requests. During Mr. Berkery's deposition, for example, counsel for Trans Union again requested that Mr. Berkery provide to them any relevant documents in his possession. Yet, Mr. Berkery waited until his response to Trans Union's motion for summary judgment to produce these letters.

Allowing Mr. Berkery to rely on these letters would unfairly prejudice Trans Union because if Trans Union had been provided these documents by Mr. Berkery in a timely fashion, it may well have prepared its defense of the FCRA claim differently. *See Nicholas*, 227 F.3d at 148. The documents speak directly to the elements of Mr. Berkery's FCRA claim. To cure the resulting prejudice, the Court arguably would need to allow Trans Union to re-file its motion for summary judgment. And allowing this evidence would not only disrupt the efficient adjudication of this matter but also is not warranted given Mr. Berkery's apparently repeated failures to comply with his discovery obligations throughout this litigation, as set forth above. *See id.* Thus, Mr. Berkery's failure to comply with his discovery obligations warrants the exclusion of this evidence under Rule 37(c)(1). *See, e.g., Estes Express Lines v. U.S.A. Lamp & Ballast Recycling, Inc.*, No. 21-cv-609, 2023 WL 3766020, at *8 (W.D. Pa. June 1, 2023) ("The Court has carefully considered 'whether

the exclusion of evidence is an appropriate sanction for [the plaintiff's] failure to comply with discovery duties.' [The plaintiff] has inexcusably failed to comply with the disclosure and supplementation mandates of Rule 26. Under the . . . analysis required by the Third Circuit, the Court holds that [the plaintiff's] failure warrants the exclusion of the damages pursuant to Rule 37(c)(1).") (quoting *Nicholas*, 227 F.3d at 148) (internal citation omitted).

For these reasons, the Court grants Trans Union's motion to exclude the August 2021 loan denial letter, the December 2020 letter to Trans Union, and the January 2021 letter to Trans Union. Under Rule 37(c)(1), Mr. Berkery "is not allowed to use that information . . . to supply evidence on a motion." Fed. R. Civ. P. 37(c)(1).

### B.  Declaration of Mr. Monari

Trans Union argues that Mr. Monari's declaration regarding Mr. Berkery's TruMark account must be excluded because it provides no authentication or foundation for the statements made therein, it was not produced during discovery, it is inadmissible hearsay because it is being offered for the truth of the matter asserted, and it is facially contradictory. Trans Union also points out that Mr. Monari was not identified by Mr. Berkery in his initial disclosures or in his discovery responses. The first time Mr. Berkery mentioned Mr. Monari was during his deposition, and when discussing Mr. Monari during his deposition, Mr. Berkery testified that he had no written statements from Mr. Monari. Trans Union thus argues that like the three letters discussed above, because Mr. Berkery did not identify or disclose Mr. Monari or this declaration prior to his inclusion of the document in his response to Trans Union's motion for summary judgment, it should be excluded under Rule 37(c)(1).

Trans Union also objects to the declaration under Rule 56(c)(2), which provides that at the summary judgment stage, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

Under Rule 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). These requirements are mandatory. *See Automatic Radio Mfg. v. Hazeltine Rsch.*, 339 U.S. 827, 831 (1950), *overruled on other grounds by Lear, Inc. v. Adkins*, 395 U.S. 653 (1969) (holding that affidavits "made upon information and belief" do not comply with Rule 56). Trans Union argues that the declaration of Mr. Monari must be excluded because the statements contained in it were not made with personal knowledge of Mr. Monari and the declaration is inadmissible as evidence because it is hearsay.

Mr. Monari's declaration, as submitted by Mr. Berkery and apparently executed by Mr. Monari on November 21, 2022, states as follows:

DECLARATION OF JOHN E. MONARI

I am John E. Monari, Vice President, Collections for TruMark Financial Credit Union and state the following under penalty of perjury;
1) The account number 00212135060004 is the same as account number 1000212135060004
2) This is the same number I sent to all three credit bureaus
3) It was accepted by Experian and Equifax
4) The account is to be deleted as of 8/19/2020
5) Post submission of AUD 100567525 no response was received from Trans Union suggesting there was an error

Monari Decl., Ex. A to Pl.'s Resp. to Mot. for Summ. J. Trans Union argues that because the affidavit "fails to state that [Mr.] Monari has personal knowledge of the facts included in the Declaration, . . . his statements are provided without foundation" and thus the declaration should be excluded under Rule 56(c)(4) because it was not "made on personal knowledge." Def.'s Mot. to Exclude, at 5.

Mr. Monari's declaration fails to comply with Rule 26(a) and (e) because Mr. Monari was not disclosed prior to Mr. Berkery's deposition, during which he testified that he had no written

documents from Mr. Monari, and the declaration itself was not previously identified or disclosed to Trans Union before Mr. Berkery submitted the document with his response to Trans Union's motion for summary judgment. Mr. Berkery was obligated to provide this relevant and responsive document to Trans Union, and because he failed to do so, he will not be able to use the declaration to create a genuine dispute of material fact. Fed. R. Civ. P. 37(c)(1); *cf. Henkel v. Highgate Hotels, LP*, No. 15-cv-1435, 2023 WL 4059749, at *2 (M.D. Pa. June 19, 2023) (precluding a witness from testifying at trial under Rules 26(e)(1)(A) and 37(c)(1) because the witness was only identified in declarations submitted three months after the close of discovery and no substantial justification existed for the plaintiff's failure to disclose the witness). For the same reasons discussed above with respect to the three letters, the Court finds that under the four-part test set forth by the Third Circuit Court of Appeals in *Nicholas*, Mr. Berkery's failure to identify or disclose Mr. Monari and his declaration warrant exclusion of this evidence under Rule 37(c)(1). 227 F.3d at 148.

Even if Mr. Berkery had previously disclosed Mr. Monari's declaration, he still would not be able to rely on the declaration in support of his response to Trans Union's motion for summary judgment. Based on Mr. Berkery's deposition testimony that he had no written documents related to Mr. Monari, given the lack of authentication of the declaration as being that of Mr. Monari, and given that the declaration lacks any language affirmatively certifying that the statements were made with personal knowledge of the declarant Mr. Monari, the Court finds that the declaration was not "made on personal knowledge," and thus, Mr. Berkery cannot rely on the declaration in support of his response to the motion for summary judgment. Fed. R. Civ. P. 56(c)(4); *see also Hlinka v. Bethlehem Steel Corp.*, 863 F.2d 279, 281–82 (3d Cir. 1988) (concluding that affidavit in which declarant "merely used the word 'believe'" failed to comply with Rule 56 "because

[declarant] did not establish that his affidavit was based on personal knowledge"); *Barnes Found. v. Twp. of Lower Merion*, 982 F. Supp. 970, 1019–20 (E.D. Pa. 1997) (declining to consider affidavit submitted in response to a motion for summary judgment because it did not comply with the requirements in Rule 56 "because [the declarant] has not shown affirmatively that he has personal knowledge"); *cf. Gen. Refractories Co. v. Travelers Ins. Co.*, No. 88-cv-2250, 1998 WL 961380, at *3–*4 (E.D. Pa. Dec. 15, 1998) (concluding that affidavit satisfied Rule 56's requirements because the affiant "affirmatively state[d] that she ha[d] 'personal knowledge of the matters set forth in this affidavit'").

For these reasons, the Court grants Trans Union's motion to exclude the declaration of Mr. Monari. Mr. Berkery will not be permitted to rely on this declaration in opposing the motion for summary judgment.[8]

---

[8]     Trans Union also argues that, even if the declaration properly laid the foundation of Mr. Monari's knowledge, it must still be excluded as inadmissible hearsay because Mr. Berkery seeks to admit the declaration for the truth of the matter asserted—that TruMark requested that Trans Union delete the TruMark account and that TruMark did not receive a response from Trans Union regarding an error in the account number listed on the AUD. *See* Fed. R. Evid. 801(c), 802. However, "hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony, i.e., in a form that would be admissible at trial." *J.F Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) (internal quotation marks omitted); *accord Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1275 n.17 (3d Cir. 1995); *Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016). Because no evidence has been introduced that Mr. Monari will be unavailable to present this testimony at trial, the Court can consider the declaration even if it is hearsay. *See Stelwagon*, 63 F.3d at 1275 n.17. However, as set forth above, the Court will not consider the declaration because it must be excluded under Rule 37(c)(1).

    Trans Union also argues that the declaration contains facts which are contradictory on the face of the declaration, and which contradict the August 2020 AUD. Specifically, Trans Union contends that the declaration's assertion that "[t]he account number 00212135060004 is the same as account number 1000212135060004" is contradictory because those numbers are not the same. Monari Decl., Ex. A. to Pl.'s Resp. to Mot. for Summ. J. It thus argues that the Court should exclude the declaration because it is patently false. Because the Court will exclude the declaration for the reasons set forth above, it need not consider this argument.

## II.     Fair Credit Reporting Act Claim

Turning to the motions for summary judgment, the Court first addresses whether Trans Union is entitled to summary judgment on Mr. Berkery's claim that it violated the FCRA by failing to delete the TruMark account after receiving the August 2020 AUD.

In Count II of Mr. Berkery's complaint, he alleges that Trans Union falsely reported the TruMark account after receiving notice that the account should be deleted. He alleges that (1) Trans Union was notified that the account was settled in full and ordered deleted by TruMark, (2) Trans Union "refused" to delete the account, and (3) Trans Union is falsely reporting the TruMark account allegedly in violation of 15 U.S.C. § 1681. Mr. Berkery has limited his claims against Trans Union to an alleged violation of 15 U.S.C. § 1681e(b) based on Trans Union's failure to delete the TruMark account after receiving the AUD.[9]

Section 1681e(b) requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Trans Union is a "consumer reporting agency" (CRA) as that term is defined by the FCRA. 15 U.S.C. § 1681(f).

CRAs can negligently or willfully violate the FCRA. To establish a negligent violation of § 1681e(b), the plaintiff must establish: "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to

---

[9]     Mr. Berkery, in both his original and amended complaints, alleges that Trans Union violated 15 U.S.C. § 1681s-2. However, Trans Union asserts in its motion for summary judgment that "[d]espite [Mr. Berkery's] Complaint allegations, [Mr. Berkery] has expressly limited his claims against Trans Union to a proposed violation of 15 U.S.C. § 1681e(b)." Def.'s Mot. for Summ. J. at 11 (citing Berkery Dep. Tr. at 17:14–18; 39:16–41:6). In his response to Trans Union's motion for summary judgment, Mr. Berkery argues that Trans Union violated 15 U.S.C. § 1681e(b). He does not address his prior allegations that Trans Union violated 15 U.S.C. § 1681s-2, nor does he dispute Trans Union's assessment of his claims, as set forth in its motion for summary judgment, as being claims for violations of 15 U.S.C. § 1681e(b). Therefore, the Court will only analyze Mr. Berkery's claim that Trans Union violated 15 U.S.C. § 1681e(b).

assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996); *see also Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010). "Information is 'inaccurate' within the meaning of the FCRA if it is incorrect or 'misleading in such a way and to such an extent that it can be expected to have an adverse effect.'" *McGrath v. Credit Lenders Serv. Agency, Inc.*, No. 20-cv-2042, 2022 WL 580566, at *9 (E.D. Pa. Feb. 25, 2022) (quoting *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014)). However, "the FCRA is not a strict liability statute" and "a reporting agency is not automatically liable even if the consumer demonstrates some inaccurate information." *McGrath*, 2022 WL 580566, at *9.

"[I]n order to show a willful violation of the FCRA, a plaintiff must prove that the defendant knowingly and intentionally" or recklessly "committed an act in conscious disregard for the rights of others." *Hutchinson v. Carco Grp., Inc.*, No. 15-cv-1570, 2015 WL 5698283, at *6 (E.D. Pa. Sept. 29, 2015) (quoting *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997)) (internal quotation marks omitted). "A defendant's conduct is reckless only if it was objectively unreasonable in light of legal rules that were clearly established at the time." *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 249 (3d Cir. 2012) (internal quotation marks omitted).

Essential for a § 1681e(b) claim is an allegation that the CRA's report included an inaccuracy. *See Berkery v. Equifax Info. Servs., LLC*, No. 18-cv-3417, 2019 WL 1958567, at *3 (E.D. Pa. May 2, 2019) (holding that Mr. Berkery's § 1681e(b) claim failed where, even construing all of the facts in his favor, he failed to allege that the consumer reporting agencies reported any inaccuracy); *see also Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 902 (3d Cir. 2011) ("In order to make out a prima facie violation of section [1681e(b)], the [FCRA] implicitly requires that a consumer must present evidence tending to show that a credit reporting agency prepared a

report containing 'inaccurate' information."); *Cortez*, 617 F.3d at 708 (providing that a *prima facie* case of a § 1681e(b) claim must include as an element that "inaccurate information was included in a consumer's credit report"). The plaintiff bears the burden of proving an inaccuracy in the report. *See Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 n.9, 1161 (11th Cir. 1991) ("[T]he burden of proving that a particular report is inaccurate is part of the plaintiff's case and not an affirmative defense for a defendant credit reporting agency."). Where a plaintiff fails to meet this burden, and fails to offer any evidence of an inaccuracy, summary judgment in favor of the defendant credit reporting agency is appropriate on a § 1681e(b) claim. *See Schweitzer*, 441 F. App'x at 902.

Trans Union asserts five primary arguments with respect to Mr. Berkery's FCRA claim: (1) accuracy is a complete defense under the FCRA and Mr. Berkery admitted, by signing the January 30, 2020 Settlement Agreement, that Trans Union's reporting was accurate; (2) Mr. Berkery did not produce required evidence demonstrating that Trans Union provided an inaccurate credit report to a third party; (3) Trans Union's reporting policies and procedures were reasonable; (4) Mr. Berkery did not produce required evidence of damages; and (5) Mr. Berkery introduced no evidence that Trans Union acted with malice or with a conscious disregard for his rights, as required for his punitive damages claim.

Trans Union first argues that Mr. Berkery has failed to prove that any reporting of the TruMark account was inaccurate, and that Trans Union published an inaccurate consumer report to a third party. Trans Union argues that by signing the January 30, 2020 Settlement Agreement, Mr. Berkery agreed that the TruMark account was accurately reported as "charged off" on the Trans Union consumer disclosure. In relevant part, the Settlement Agreement provides that Mr. Berkery "agrees that all information contained within the [Trans Union consumer] [d]isclosure is

accurate." Redacted Settlement Agreement ¶ 5. Mr. Berkery has introduced no evidence that Trans Union ever reported the TruMark account in any manner other than as "charged off." Mr. Berkery does not purport to challenge the *accuracy* of Trans Union's reporting of the TruMark account; rather, he is only challenging Trans Union's *failure to delete the account* after allegedly being notified by TruMark that the account was to be deleted.

Even viewing the facts in the light most favorable to Mr. Berkery, there is no evidence that Trans Union's reporting of the TruMark account was inaccurate, meaning Mr. Berkery has failed to satisfy his burden of establishing a *prima facie* case of a violation of § 1681e(b). *See Schweitzer*, 441 F. App'x at 902; *Cortez*, 617 F.3d at 708; *Philbin*, 101 F.3d at 963.

Trans Union additionally argues that Mr. Berkery failed to produce evidence demonstrating that Trans Union provided an inaccurate credit report to a third party. Specifically, Trans Union points out that Mr. Berkery "has not and cannot produce, as required, a Trans Union consumer report furnished to anyone which contained the alleged inaccurate [a]ccount." Def.'s Mot. for Summ. J. at 13. Mr. Berkery attempted to introduce evidence to this effect—the August 2021 Veterans United Home Loans letter to Mr. Berkery and unidentified and undated pages relating to Mr. Berkery's credit score—in support of his response in opposition to the motion for summary judgment. However, for the reasons set forth above, Mr. Berkery is precluded from relying on this evidence to oppose Trans Union's motion for summary judgment under Rule 37(c)(1).

Moreover, Mr. Berkery's response to Trans Union's summary judgment motion failed to sufficiently identify with specificity *any* third party to which Trans Union had published an inaccurate credit report. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'") (quoting Fed. R. Civ. P. 56(e)); *Anderson*, 477 U.S. at 252 ("The mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff."). Mr. Berkery's reply

states that

> [a]ny potential creditor, and possibly others such as insurance and mortgage
> companies who requested a copy of Plaintiff's credit report during the 21 month
> period Trans Union refused to delete the TruMark account were given false and
> outdated information. A partial list is provided herein on credit report from Trans
> Union during the period.

Pl.'s Reply to Def.'s Mot. for Summ. J. at ECF 4. However, Mr. Berkery fails to sufficiently

identify which third parties received a copy of his credit report from Trans Union during the

relevant time frame.

Mr. Berkery fails to establish that Trans Union violated § 1681e(b) because he identified

no inaccuracies in the report and failed to specify which third party, if any, received an allegedly

inaccurate report from Trans Union. For these reasons, the Court will grant Trans Union's motion

for summary judgment as to Mr. Berkery's FCRA claim against it.[10]

### III.   Breach of Settlement Agreement Counterclaim

In its motion for summary judgment, Trans Union also argues that Mr. Berkery breached

the Settlement Agreement he entered into with Trans Union by (1) bringing a lawsuit that arises

from Trans Union's reporting of the TruMark account which he agreed in the Settlement

Agreement would not serve as the basis for future lawsuits, (2) failing to provide Trans Union with

the required written notice of his intent to sue and allowing Trans Union an opportunity to remedy

---

[10]     Because the Court finds that Mr. Berkery failed to produce evidence showing an inaccuracy in the
reporting of the TruMark account, which is fatal to his § 1681e(b) claim, the Court will not address Trans
Union's other arguments. The Court notes that Trans Union framed these additional arguments as
alternative grounds for why Trans Union was entitled to summary judgment on the § 1681e(b) claim,
assuming the Court found that Mr. Berkery could show an inaccuracy in the reporting of the TruMark
account.

any problems, and (3) filing an unredacted or unsealed copy of the confidential Settlement Agreement without Trans Union's permission.

In his motion for summary judgment, Mr. Berkery argues that he is entitled to summary judgment on Trans Union's breach of contract counterclaim because (1) he believes that there was no contract in force between the parties as of March 12, 2021, when he initiated the present lawsuit, that would impact his claims related to Trans Union's failure to delete the TruMark account in response to the AUD; and (2) he argues that paragraph 5 of the settlement agreement—which states that the information in the January 24, 2020 Trans Union consumer disclosure "will not provide the basis for any future claims against Trans Union"—does not extend to bind the parties beyond the date of the execution of the Settlement Agreement, which is January 30, 2020.

"To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege three things: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages." *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 502 (E.D. Pa. 2008); *accord Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). Here, it is undisputed that the Settlement Agreement signed by Mr. Berkery on January 30, 2020 is a valid and enforceable contract. Although Mr. Berkery appears to argue in his motion for summary judgment that the Settlement Agreement is not binding on the parties after the date of the execution of the agreement, he fails to cite anything whatsoever to support this understanding of contract law. Mr. Berkery points to no evidence in the record which would suggest that the Settlement Agreement was no longer binding when he filed the present lawsuit, nor does he cite to any caselaw which would suggest that the Settlement Agreement stopped being an enforceable contract after it was executed. Moreover, Mr. Berkery acknowledged during his deposition that the Settlement Agreement is a

valid and enforceable contract. Because Mr. Berkery failed to point to concrete evidence in support of his position, and instead relies entirely on bare and conclusory allegations, he fails to create a genuine dispute as to the enforceability of the Settlement Agreement. *See Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005), *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018) (en banc); *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004).

The relevant material terms of the Settlement Agreement have also been established, including that (1) no further claims were to arise from Trans Union's reporting of the TruMark account; (2) Trans Union's reporting of the TruMark account as "charged off" was accurate; and (3) Mr. Berkery was to provide Trans Union notice of at least thirty days, and give the CRA an opportunity to resolve any issues, prior to Mr. Berkery initiating another lawsuit. *See* Redacted Settlement Agreement ¶¶ 5, 7.

Here, it is clear that Mr. Berkery breached the Settlement Agreement. First, the Settlement Agreement states that "Plaintiff acknowledges that he has reviewed the copy of his Trans Union consumer disclosure, dated January 24, 2020 . . . and Plaintiff agrees that all information contained within the Disclosure is accurate and *will not provide the basis for any future claims against Trans Union*." Redacted Settlement Agreement ¶ 5 (emphasis added). Mr. Berkery's FCRA claim against Trans Union relates to Trans Union's failure to delete the TruMark account—which was reported in the January 24, 2020 Consumer Disclosure as "charged off"—after it received the AUD from TruMark in August 2020. By bringing the instant lawsuit, Mr. Berkery breached paragraph 5 of the Settlement Agreement.

Mr. Berkery also breached the Settlement Agreement by failing to notify Trans Union in writing at least thirty (30) days before initiating his present lawsuit. He testified during his

deposition that he could not remember if, or when, he had sent a letter putting Trans Union on notice that he intended to sue the CRA. *See* Berkery Dep. Tr. at 64:13–65:20. Mr. Berkery cites to no evidence of the record, and no admissible evidence, to demonstrate that he complied with this provision of the Settlement Agreement by writing to Trans Union expressing his intent to sue.[11]

Finally, with respect to damages, Trans Union argues that it has incurred attorneys' fees defending against Mr. Berkery's FCRA claim and pursuing this action for breach of contract. Trans Union argues that these attorneys' fees constitute damages arising directly out of Mr. Berkery's breach of the Settlement Agreement. Trans Union points out that in the Settlement Agreement, Mr. Berkery "agree[d] that Trans Union may recover any and all reasonable attorneys' fees, costs, and expenses incurred in enforcing any term of this Agreement or for breach thereof in addition to any other damages to which Trans Union may be entitled." Redacted Settlement Agreement ¶ 13. Although Mr. Berkery denies Trans Union's statements regarding attorneys' fees, he fails to point to any evidence which would suggest that Trans Union has not incurred attorneys' fees in enforcing the terms of the Settlement Agreement. Moreover, his denials appear to confuse the issues at play in this litigation because he asserts that Trans Union's attorneys' fees from a prior case (presumably the case resulting in the subject Settlement Agreement) are not relevant to the present matter, suggesting that he misunderstands Trans Union's arguments regarding the attorneys' fees it has incurred in *this* lawsuit defending against Mr. Berkery's breach of the settlement agreement.[12]

---

[11]     In response to Trans Union's motion for summary judgment, Mr. Berkery attempts to rely on multiple letters that he claims were sent to Trans Union. This includes a letter from Mr. Berkery to Trans Union dated December 23, 2020 and a letter from Mr. Berkery to Trans Union dated January 1, 2021. Because Mr. Berkery never produced these documents to Trans Union until filing his response to Trans Union's motion for summary judgment, and as set forth above, Mr. Berkery cannot rely on these documents in support of his response to Trans Union's motion for summary judgment. *See* Fed. R. Civ. P. 37(c)(1).

[12]     Although Trans Union argues that it has incurred attorneys' fees to establish the resultant damages necessary for a successful breach of contract claim, Trans Union does not appear to be seeking the payment

Even construing the facts of record in favor of Mr. Berkery, the evidence establishes that Mr. Berkery breached the January 30, 2020 Settlement Agreement. Thus, the Court grants Trans Union's motion for summary judgment on its breach of contract counterclaim and denies Mr. Berkery's motion for summary judgment as to Trans Union's breach of contract counterclaim.

### CONCLUSION

For the reasons set forth above, the Court grants Trans Union's Objection and Motion to Exclude Previously Unproduced, Unidentified and Inadmissible Evidence Submitted in Support of Plaintiff's Opposition to Trans Union's Motion for Summary Judgment; grants Trans Union's Motion for Summary Judgment as to Mr. Berkery's FCRA claim and Trans Union's breach of contract counterclaim; and denies Mr. Berkery's Motion for Summary Judgment. Appropriate orders follow.

**BY THE COURT:**

**<u>s/ Gene E.K. Pratter</u>**
**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**

---

of those attorneys' fees in its motion for summary judgment. Trans Union does not specify the amount of attorneys' fees it has incurred, nor does the motion for summary judgment include any language whatsoever seeking to compel Mr. Berkery to pay these fees. Therefore, the Court will not reach this issue in resolving the instant motions.